07-3545-cv
Dalton v. Harleysville

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: October 15, 2008                                        Decided: February 19, 2009)

Docket No.  07-3545-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

IRMA DALTON, BLANCHE DALTON, doing business as SIDNEY 39 LTD.,

 Plaintiffs-Appellants,

v.

HARLEYSVILLE WORCESTER MUTUAL INSURANCE COMPANY, HARLEYSVILLE GROUP,

 Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LEVAL, KATZMANN, and LIVINGSTON, *Circuit Judges*.

 Plaintiffs, insured under an all-risk policy covering a building, appeal from grant of summary judgment in favor of the defendant insurer by the United States District Court for the Eastern District of New York (Irizarry, *J.*).  Although New York court rulings were in conflict, the district court inferred from the silence of the New York Court of Appeals that under New York law insurance against "collapse" is triggered only by "total or near total destruction," and not by a building's loss of structural integrity resulting from hidden decay.  Because the insurer wrote a policy using ambiguous terms whose meaning is not clarified by New York decisions, the policy must be read under New York law in favor of the insured.  The Court of Appeals (Leval, *J.*) vacates the judgment and remands.

1

PATRICIA A. ROONEY, Sinnreich & Kosakoff LLP, Central Islip, New York, for *Appellants*.

HENRY J. CERNITZ, Jacobson & Schwartz, Rockville Centre, New York, for *Appellees*.

LEVAL, *Circuit Judge*:

This is an appeal by the insured plaintiffs from the judgment of the United States District Court for the Eastern District of New York (Irizarry, *J.*) granting the defendant insurer's motion for summary judgment dismissing the suit. Plaintiffs-Appellants Irma and Blanche Dalton (collectively "the Daltons"), as proprietors of a building at 39 Sidney Place, Brooklyn, N.Y., were insured under a so-called "all risk" policy issued by the defendant Harleysville Worcester Mutual Insurance Company, which covered "collapse" caused by "[h]idden decay." The building was found to be so severely damaged by hidden decay that the New York City Department of Buildings issued a notice to vacate because of the building's structural instability. The Daltons claimed for the damage. When Harleysville disclaimed coverage, the Daltons brought this suit.

Both sides moved for summary judgment. The district court granted summary judgment in favor of Harleysville, holding that the damage to the Daltons' building came within the policy's express exclusion of "bulging," and in any event did not come within the concept of "collapse" under New York law, which the court concluded is triggered only by "total or near total destruction." We believe the district court misread the evidence in relation to the terms of the policy, and drew inappropriate significance from the refusal of the New York Court of Appeals to review lower court precedent. The judgment is vacated and the case remanded.

## BACKGROUND

The following facts are undisputed. The Daltons own a three-story townhouse located at 39 Sidney Place, Brooklyn, New York, upon which in May 2003 Harleysville issued an all-risk insurance policy. On February 25, 2004, while the policy was in effect, damage to an interior common party wall between the Daltons' building and an adjacent building was discovered. The Daltons immediately reported the damage and claimed against the policy. On June 10, 2004, the New York City Department of Buildings ordered that the building be vacated.

Harleysville disclaimed coverage, asserting that the damage fell within the policy exclusions. The Daltons then retained Benjamin Lavon, a professional engineer, to conduct an analysis of the structural failure of the party wall. The Daltons and Harleysville agreed to rely on Lavon's report for purposes of this litigation. Lavon observed that the party wall exhibited large bulging of the masonry wall, movements, deteriorating masonry, and crumbling mortar joints. The conditions were hidden from view by a wall finish, which prevented observation of the deterioration. Lavon concluded that the "structural failure of the Party Wall resulted from deteriorated mortar joints" and that "the deterioration of the mortar joints that resulted in the Collapse of the Party Wall was hidden from view" because of a finish which completely covered the Party Wall.

The policy provides that Harleysville will pay for "direct physical loss of or damage . . . caused by or resulting from any Covered Cause of Loss." A Covered Cause of Loss includes risks of direct physical loss.

Section B of the policy provides for exclusions. Section B.2.k(2) excludes coverage for "decay, deterioration, . . . or any quality in [the] property that causes it to damage or destroy

3

itself." Section B.2.k(4) excludes coverage for "[s]ettling, cracking, shrinking or expansion." And finally, Section B.2.i. excludes coverage for "[c]ollapse, *except as provided in the Additional Coverage for Collapse*" (emphasis added).

The Additional Coverage for Collapse under Section A.5.d. states that Harleysville will pay for loss or damage resulting from "risks of direct physical loss involving collapse of a building or any part of a building caused . . . by . . . (2) [h]idden decay." It adds, however, that collapse does not include "settling, cracking, shrinkage, bulging or expansion."

The district court granted the defendant insurer's motion for summary judgment, relying essentially on two reasons. First, the court construed the Lavon report as meaning that the damage to the building consisted of "bulging," which is expressly excluded by the terms of the Additional Coverage for Collapse. Second, the court read the opinions of New York State courts, citing *Graffeo v. U.S. Fidelity & Guaranty Co.*, 246 N.Y.S.2d 258 (App. Div. 2d Dep't 1964) and *Rector St. Food Enterprises Ltd. v. Fire & Casualty Insurance Co. of Connecticut.*, 827 N.Y.S.2d 18 (App. Div. 1st Dep't 2006), to mean that "collapse" coverage applies only to total or near total destruction of the property. Because it was undisputed that the Daltons' building was not destroyed, but merely structurally unsound, the district court entered summary judgment in favor of Harleysville. We believe the court erred in both respects.

**DISCUSSION**

Under New York law, an insurance contract must be interpreted so that a clear and unambiguous policy provision is given its plain and ordinary meaning. *U.S. Fid. & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232 (1986). Ambiguities are generally resolved in the insured's favor. *Id.*

4

The policy in question is an all-risk policy for damage to the covered building. Under an all-risk policy, any losses caused by fortuitous peril are covered unless the policy contains an express provision excluding the losses. *See Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006). To determine whether the policy applies to the particular damage, we must follow the policy's serpentine of "Property Coverage" described above in the Background of this opinion.

A. *The Lavon Report did not attribute collapse to "bulging."* The district court reasoned as follows: "The Daltons purchased an insurance policy which . . . explicitly did not insure . . . against bulging caused by hidden decay, which is exactly what the Daltons' own expert [Lavon] reported was the cause of the structural impairment. Equating bulging with collapse, which is what the Daltons are asking the court to do, is an unreasonable reading of the Policy."

We believe this reasoning was based on a misunderstanding of Lavon's report and the terms of the policy. The court understood Lavon's report to identify "bulging" as the defect constituting the collapse of the party wall. But that is not what Lavon wrote. He did indeed mention "bulging," noting that "the party wall exhibited large bulging of the masonry." If this had been the only defect Lavon observed, we would agree with the district court that coverage would be excluded by the clause of the "Additional Coverages" that, after specifying coverage for "collapse," adds that "[c]ollapse does not include . . . bulging."

But bulging was not the only defect that Lavon observed. As noted above, he also observed "crumbling and deteriorated[ mortar joints] that were hidden from view," and he concluded:

(a)     [T]he structural failure of the Party Wall resulted from deteriorated mortar joints.

5

(b) [T]he deterioration of the mortar joints that resulted in the Collapse of the Party Wall was hidden from view . . . .

The condition Lavon identified as the cause of collapse was not "bulging," which the policy excludes, but hidden deterioration. The policy expressly covers "collapse" if caused by "[h]idden decay." (Lavon noted that he used the words "deterioration" and "decay" interchangeably.) We therefore believe the district court was mistaken in construing Lavon's finding of collapse to be predicated on the excluded condition, "bulging."

B. *New York law is unsettled as to the meaning of "collapse."* Citing a ruling of the New York Supreme Court, Appellate Division, Second Department, *Graffeo*, 246 N.Y.S.2d 258, the district court ruled that the term "collapse" in an insurance policy means "total or near total destruction," and is not satisfied by a condition of "substantial impairment of the structural integrity of a building." The district court recognized that a ruling of the Appellate Division, Third Department, adopted the contrary view that "substantial impairment of the structural integrity" was sufficient to constitute collapse, and that total or near-total destruction was not required. *See Royal Indem. Co. v. Grunberg*, 553 N.Y.S.2d 527 (App. Div. 3d Dep't 1990). The district court, however, concluded that New York's highest court had "tacitly accept[ed] the [*Graffeo* court's] narrow definition of 'collapse'" by declining to grant a motion for leave to appeal from the Second Department's ruling in *Graffeo*. *See Graffeo v. U.S. Fid. & Guar. Co.*, 14 N.Y.2d 685 (1964).

This was a misunderstanding of the significance of the denial of a motion for leave to appeal an Appellate Division ruling. The district court construed it as the equivalent of an affirmance of the lower court's ruling. Refusal to review the lower court's ruling has no such

6

significance. The Court of Appeals recently reiterated that the "denial of a motion for leave to appeal is not equivalent to an affirmance and has no precedential value." *Franklin v. Miner*, 7 N.Y.3d 735 (2006).

The state of the law in New York with respect to the meaning of the term "collapse" in such a policy is a conflict of Appellate Division rulings as to whether "substantial impairment of the structural integrity of the building" suffices to come within the term, as held by the Third Department in *Grunberg,* or whether "total or near total destruction" is required, as held by the Second Department in *Graffeo.*[1]

Accordingly, New York law provides no clear answer whether coverage for "collapse" caused by "hidden decay" covers a building whose structural integrity was impaired by deteriorated mortar joints that were hidden from view, or requires that the building have suffered

---

[1] The holding of the Appellate Division, First Department in *Rector St.*, 827 N.Y.S.2d at 18, which the district court discussed, is not useful in resolving the meaning of the policy in the present case because the policy in *Rector St.* contained express definitional terms, which are not present in the Daltons' policy. It provided, for example, that a collapse was "an abrupt falling down or caving in" and that "a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, . . . or expansion." *Id.* Because the *Rector St.* policy provided a definition of collapse agreed to by the parties, which addresses the ambiguity, the court's ruling is not a useful indicator of how the New York courts would rule in the absence of an agreed definition. In any event, no matter how one construes the First Department's decision in *Rector St.*, there remains a split in New York's lower courts, which has not been resolved by New York's highest court.

Nor is the issue answered by our court's ruling in *Bailey v. Hartford Fire Insurance Co.,* 565 F.2d 826 (2d Cir. 1977), which undertook to answer whether under New York law impairment of structural integrity sufficed to constitute a collapse if the "insured property [was] be demolished [or] reduced to rubble." *Id.* at 830. Although *Bailey* was not a decision of a New York court, it might nonetheless be binding on the district court and on us, as a prior holding of the Second Circuit. Although the *Bailey* holding seems to favor the insureds on the question of need for total or near-total destruction, we cannot be sure that the policy in *Bailey* was sufficiently similar to the policy here at issue to make it a useful precedent. From what we can discern about the *Bailey* policy, there are surely substantial differences. The *Bailey* court held that while the policy did not require that the property be "demolished [or] reduced to rubble," the term "collapse" as used in that policy did require "*a sudden impact* that is destructive of the structural integrity of the insured building." *Id.* (emphasis added). The policy in the case before us provides coverage for "collapse" that is caused by both "hidden decay" and "hidden insect or vermin damage." In this respect the present policy surely differs from the *Bailey* policy. If it had covered collapse caused by "hidden decay" or "hidden insect or vermin damage," the court could not have concluded that a "sudden impact" was required. Being certain that there are significant differences between the *Bailey* policy and the Daltons' policy, but unsure as to the nature and extent of the differences, we believe it would be unwarranted to conclude that the *Bailey* holding is binding on us with respect to the Daltons' policy.

7

a total or near-total destruction (or some other formulation the Court of Appeals may eventually settle on).

C. *Suddenness is not required.* Harleysville argues that, regardless of whether collapse requires near-total destruction or is satisfied by substantial impairment of integrity, New York law requires in either scenario that the condition arise suddenly. In support, it cites both *Grunberg* and *Bailey*. In both cases, the courts concluded that collapse under the policies at issue required a sudden destructive force, and remanded for trial of the question whether the impairment of structural integrity was the product of a sudden destructive force or a slow deterioration.

The argument fails. While we do not know the full text of the policies in those cases, we can be confident they differed from this policy with regard to any requirement of suddenness. The policy at issue expressly provides coverage for collapse caused by "hidden decay" and "hidden insect or vermin damage." By their very nature, hidden decay and hidden insect or vermin damage occur slowly and not as a sudden destructive force. Even if the *Grunberg* and *Bailey* opinions should be read to mean that the term "collapse," without further explanation, requires a sudden destructive force, that is surely not the case where the policy in question defines collapse in a manner which expressly includes conditions that occur only slowly.

D. We conclude that the plain text of Harleysville's policy is "ambiguous and susceptible of two reasonable interpretations," *State v. Home Indem. Co.*, 66 N.Y.2d 669, 671 (1985), by an average insured upon reading the policy, *Mostow v. State Farm Ins. Cos.*, 88 N.Y.2d 321, 326-27 (1996). The policy language, read as a whole, does not resolve the question of whether "total or near total destruction" is required, and the case law in New York does not supply a clear

8

definition of "collapse" that might clarify the ambiguity. We also note that other insurers in New York have used forms that speak much more directly to the dispute involved here. *E.g.*, *Rector St.*, 827 N.Y.S.2d at 18 (construing policy language that a "building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion").

Having found a genuine ambiguity, we must apply the rule that ambiguities in insurance policies are generally resolved in favor of the insured. *Annunziata*, 67 N.Y.2d at 232. We therefore reject the district court's ruling that the Daltons' coverage for collapse covers only a total or near-total destruction and not a substantial impairment of the integrity of the building. We vacate the judgment and remand for further proceedings in accordance with this opinion.

**CONCLUSION**

The Judgment is VACATED and the case remanded for further proceedings.

9