*Town of Harrietstown v. Westchester Fire Ins. Co.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of May, two thousand twenty-six.

PRESENT:
>GERARD E. LYNCH,
>JOSEPH F. BIANCO,
>MARIA ARAÚJO KAHN,
>>*Circuit Judges.*

---

TOWN OF HARRIETSTOWN,

>*Plaintiff-Counter-Defendant-Appellee*,

>v.

WESTCHESTER FIRE INSURANCE COMPANY, ACE PROPERTY AND CASUALTY INSURANCE COMPANY,

>*Defendants-Counter-Claimants-Appellants,*

BRANDYWINE HOLDINGS CORPORATION,

>*Defendant.*

25-2253-cv

---

| | |
|---|---|
| FOR DEFENDANTS-COUNTER-CLAIMANTS-APPELLANTS: | JONATHAN D. HACKER, O'Melveny & Myers LLP, Washington, DC (Jenya Godina, |

O'Melveny & Myers, Washington, DC; Robert F. Walsh and Luciana P. Lalande, White and Williams LLP, New York, NY, *on the brief*).

FOR PLAINTIFF-COUNTER-
DEFENDANT-APPELLEE:

NICHOLAS C. RIGANO, Rigano LLC, Melville, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on August 18, 2025, is **AFFIRMED**.

Defendants-Appellants Westchester Fire Insurance Company and ACE Property and Casualty Insurance Company ("ACE") (collectively, the "Insurers") appeal from the district court's partial grant of summary judgment in favor of Plaintiff-Appellee Town of Harrietstown (the "Town"), finding that the Insurers have a duty to defend the Town with respect to a claim relating to the Town's use of contaminants at its regional airport. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

**BACKGROUND**

The Town owns and operates the Adirondack Regional Airport (the "Airport") in Lake Clear, New York. The Insurers issued to the Town a series of "Airport Owners and Operators General Liability" policies during the period from June 1, 2000, to January 1, 2021 (the "Policies"). Joint App'x at 120. Each of the Policies covers, *inter alia*, "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and also states that the Insurers have "the right and duty to defend any 'suit' seeking those damages." *Id.* at 174. In addition, each of the Policies contains an identical pollution

2

exclusion (the "Pollution Exclusion") with a "crash, fire, explosion" exception. More specifically, the Pollution Exclusion provides, in relevant part:

> 1. This policy does not cover claims directly or indirectly occasioned by, happening through or in consequence of:
>    . . .
>
>    (b) pollution and contamination of any kind whatsoever,
>    . . .
>
> unless caused by or resulting in a crash fire explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation.
>
> 2. With respect to any provision in the policy concerning our duty to investigate or defend claims, such provision shall not apply and we shall not be required to defend:
>    (a) claims excluded by Paragraph 1; or
>    (b) a claim or claims covered by the policy when combined with any claims excluded by Paragraph 1 (referred to below as "Combined Claims").
>
> 3. In respect of any Combined Claims, we shall (subject to proof of loss and the LIMITS OF INSURANCE) reimburse you for that portion of the following items which may be allocated to the claims covered by the policy:
>    (i) damages awarded against any insured; and
>    (ii) defense fees and expenses incurred by any insured.

*Id.* at 139.

In March 2019, the New York State Department of Environmental Conservation ("NYSDEC") detected an elevated level of per- and polyfluoroalkyl substances ("PFAS") at the Airport. PFAS, a pollutant colloquially known as "forever chemicals," is contained in aqueous film-forming foam ("AFFF") used for firefighting purposes. In November 2020, the NYSDEC informed the Town, through a potentially responsible party ("PRP") letter, that the Town may be responsible for environmental contamination at the Airport. If found responsible, the Town would be liable for the state's investigation into the contamination and any subsequent remedial actions. Upon receipt of the letter, the Town submitted the letter to the Insurers and invoked its coverage

3

under the Policies. The Insurers subsequently acknowledged receipt of the Town's letter and assigned it a claim number.

The Insurers then began determining which Policies were relevant and applicable to the Town's claim. In doing so, ACE requested "[d]ocumentation and purchase and usage history of AFFF by the Airport District," as well as a "[c]omplete history of any fires, airplane crashes, explosions or collisions occurring at the Site dating back to 1960." *Id.* at 239. In response, the Town provided a survey completed by its airport manager that noted storage and use of AFFF for training purposes at the Airport, but indicated that it was "unknown" whether such substances had been used for emergency purposes. *Id.* at 249. In addition to two crash reports, the Town provided a newspaper article regarding another emergency landing at the Airport, which referenced the presence of foam. On March 23, 2021, the Insurers requested further clarification regarding the Airport's use of contaminants. The Town subsequently explained that, while it "would often document instances where it would test equipment and/or train with AFFF . . . , due to the nature of emergency response, [the] Town would not document use of AFFF in response to plane crashes." *Id.* at 335. It further explained that "[s]ampling under the remedial investigation . . . w[ould] confirm AFFF use in response to plane crashes and otherwise." *Id.*

On May 7, 2021, the Town's attorney informed the Insurers via email that he intended to recommend that the Town enter into a consent order with the NYSDEC. The email attached a proposed consent order stating that the PFAS contamination at the Airport "appear[ed] to be" due to multiple causes, including AFFF "spilled or used for training, responding to plane crashes, and/or for other purposes at the [s]ite." *Id.* at 344. On June 25, 2021, the Insurers informed the Town that ACE would "provide for [the Town's] defense . . . subject to a full reservation of rights," and "reserve the right to withdraw from the defense" if coverage was later determined to be

4

unwarranted under the relevant Policies. *Id.* at 367–69. The letter also quoted from the Policies' Pollution Exclusion and stated that, "[i]f it is ultimately determined that the claims asserted by the NYDEC [sic] fall within the above exclusion, coverage is precluded." *Id.* at 371–72.

On August 27, 2021, the Town entered into a consent order with the NYSDEC. The Town subsequently hired an environmental consultant to prepare a "Remedial Investigation Workplan" to "determine the nature and extent of the contamination at the site and evaluat[e] cleanup options." *Id.* at 188, 658. The workplan was approved by the NYSDEC in July 2022. The first phase of the investigation found contamination in areas corresponding to the Town's AFFF use, including those associated with the previously identified emergency landing. The second phase had been scheduled to start in August 2024 and would have further investigated locations involving plane crashes and conducted groundwater sampling.

On March 15, 2024, the Insurers sent a letter to the Town, stating that "the insured bears the burden to prove that the damages were 'caused by . . . a crash fire explosion or a recorded in-flight emergency causing abnormal aircraft operation,'" quoting the exception to the Pollution Exclusion. *Id.* at 503–04. The letter further asserted that, "to the extent that there may be multiple causes of any contamination such that the matter constitutes a 'Combined Claim' within the meaning of the [Policies'] language, any coverage will be in the form of reimbursement of expenses, subject to proof of loss and limits of insurance." *Id*. at 504.

On July 23, 2024, after additional correspondence, the Insurers informed the Town that they would no longer defend the Town for the NYSDEC claim because it "involve[d] pollution or contamination" and triggered the Pollution Exclusion. *Id.* at 521. The Insurers would only "reimburse the Town for defense fees and expenses and damages, if any, properly allocable to" the portion of the contamination that the Town could prove resulted from plane crashes. *Id.*

5

On September 27, 2024, the Town filed the instant lawsuit against the Insurers. In its Amended Complaint, the Town sought (1) a "declaratory judgment of its rights under the insurance policies"—*i.e.*, a "determination and declaration that [the Insurers] have a duty to defend the Town with respect to the NYSDEC Claim"; and (2) damages for breach of contract. *Id.* at 9. The Insurers filed a counterclaim seeking a declaration that they owed neither a duty to defend nor a general duty to reimburse defense costs. The parties subsequently cross-moved for summary judgment. On August 18, 2025, the district court granted in part and denied in part the cross-motions. *See generally Town of Harrietstown v. Westchester Fire Ins. Co.*, No. 8:24-cv-1184 (MAD/DJS), 2025 WL 2391758 (N.D.N.Y. Aug. 18, 2025). Specifically, it granted the Town's summary judgment motion as to the duty to defend, determining "that [the] Insurers have a duty to defend the Town under the terms of the Policies unless and until such time as the Insurers can establish with certainty that the NYSDEC claim falls outside of an exception of the Pollution Exclusion clause." *Id.* at *21. The district court granted summary judgment in favor of the Insurers with respect to the breach of contract claim.[1] *Id.* This appeal followed.

## DISCUSSION

"We review de novo a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor." *Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023) (internal quotation marks and citation omitted). A moving party is entitled to summary judgment where the record reveals "no genuine

---

[1] The Town did not cross-appeal the grant of summary judgment on their breach of contract claim. Accordingly, we do not address that portion of the district court's decision. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995).

6

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Insurance policies are, in essence, creatures of contract, and accordingly, subject to principles of contract interpretation." *In re Estates of Covert & Another*, 97 N.Y.2d 68, 76 (2001); *see also Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 274 (2d Cir. 1992) (explaining that an insurance contract "is governed by the rules of construction applicable to contracts generally"). Under New York law,[2] a fundamental principle of contract interpretation is that contracts are "construed in accord with the parties' intent," the "best evidence of" which "is what they say in their writing." *Greenfield v. Philles Recs.*, 98 N.Y.2d 562, 569 (2002) (internal quotation marks and citation omitted). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.* "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or where its terms are subject to more than one reasonable interpretation." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 25 N.Y.3d 675, 680 (2015) (internal quotation marks and citations omitted). "[P]arties cannot create ambiguity from whole cloth where none exists, because provisions are not ambiguous merely because the parties interpret them differently." *Id.* (internal quotation marks and citation omitted). Finally, "[t]he determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." *In re Prudential Lines, Inc.*, 158 F.3d 65, 77 (2d Cir. 1998).

Here, our analysis focuses on the "Combined Claims" provision in the Pollution Exclusion, which is identical in each of the Policies. Although the Insurers argue for an expansive reading of the Pollution Exclusion as a whole, their argument rises or falls on whether the phrase "Combined

---

[2] The parties agree that New York state law applies to the Policies at issue here.

7

Claims," as used in the Pollution Exclusion, can encompass "a subsequent allocation of [a] demand into distinct claims for cleanup costs attributable to specific pollution causes"—*i.e.*, whether a single claim related to pollution can be split up based on potential different causes of that pollution. *See* Appellants' Br. at 27 (emphasis omitted). The Insurers assert that "[t]he Combined Claims provision implements" a scheme of "retroactive reimbursement for particular costs, after a generic demand for cleanup costs can be functionally construed as separate claims for separate costs." *Id.* at 27 (emphasis omitted). In other words, under their reading of the Pollution Exclusion, the NYSDEC claim in the November 2020 PRP letter triggers the "Combined Claims" provision because the pollution at issue may have resulted from a combination of everyday and emergency use of contaminants, and therefore, the Insurers are, at most, subject to a duty to reimburse any costs associated with pollution proven to arise from emergency usage. We are unpersuaded.

Pursuant to the explicit terms of the Policies, "Combined Claims" exist when "a claim or claims covered by the policy [is] combined with any claims excluded by Paragraph 1." Joint App'x at 139. Accordingly, the meaning of the phrase turns on the definitions of "combined" and "claims" and the phrase's use within the broader context of the full Policies.

On *de novo* review, we agree with the district court that the phrase "Combined Claims" unambiguously refers to "a covered claim combined with an uncovered claim," and therefore forecloses the Insurers' argument that the phrase includes two potential pollution causes under a single claim. *Town of Harrietstown*, 2025 WL 2391758, at *12 (emphasis omitted). The district court properly began its analysis by turning to accepted dictionary definitions to discern the plain meanings of "combined" and "claim[s]." *See 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 120 (2d Cir. 2011) (explaining that "[i]t is common practice . . . to refer to the dictionary to determine the plain and ordinary meaning of words to a contract") (internal

8

quotation marks and citation omitted). With respect to the word "combined," the district court correctly noted that numerous dictionaries provided similar definitions of the term, all of which make clear that "combined" references more than one thing. *See, e.g.*, *Combine*, MERRIAM-WEBSTER ONLINE, https://www.merriamwebster.com/dictionary/combine [https://perma.cc/JUF2-ZN6G] (last visited May 1, 2026) (defining "combine" as "bring[ing] into such close relationship as to obscure individual characters" or "to act together"); *Combined*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/combined [https://perma.cc/J2MY-58CF] (last visited May 1, 2026) (defining "combined" as consisting "of two or more different things joined together"); *Combined*, THE BRITANNICA DICTIONARY, https://www.britannica.com/dictionary/combined [https://perma.cc/NR37-MGRU] (last visited May 1, 2026) (defining "combined" as "formed or produced by adding two or more things or amounts together").

In the instant case, the relevant things to be combined are "claims." As "claim" and "claims" were undefined in the insurance policy, the district court again properly looked to dictionary definitions to discern the term's plain meaning. According to Black's Law Dictionary, "claim" is defined as an "assertion of an existing right"; a "demand for money, property, or a legal remedy to which one asserts a right"; or an "interest or remedy recognized at law." *Claim*, BLACK'S LAW DICTIONARY (12th ed. 2024). Indeed, we have repeatedly held that a "claim," in the insurance context, constitutes "a demand for specific relief owed because of alleged wrongdoing." *Windham Solid Waste Mgmt. Dist. v. Nat'l Cas. Co.*, 146 F.3d 131, 134 (2d Cir. 1998) (internal quotation marks and citation omitted) (collecting cases); *see also Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999) ("[T]he ordinary meaning of claim is an assertion by a third party that in the opinion of that party the insured may be liable to it for damages which are within the risks covered by the policy.") (alteration adopted)

9

(internal quotation marks and citation omitted). In other words, a "claim," when used in the singular, denotes a demand for relief or an assertion of a right. Therefore, when "combined" and "claims" are read together, the phrase necessarily has the meaning of the joining or bringing together of distinct demands for relief.

That meaning is confirmed when the provision is read in conjunction with the whole of the Pollution Exclusion, which explicitly contrasts "claims covered by the policy" from claims "excluded by" the policy. Joint App'x at 139; *see also Ali v. Fed. Ins. Co.*, 719 F.3d 83, 93 (2d Cir. 2013) ("The text [of a contract] should always be read in its context.") (internal quotation marks and citation omitted). In other words, the clause makes an explicit distinction between *two different types of claims*—covered and uncovered. It does not make this distinction based on cause, as the Insurers contend. Although the Insurers are correct insofar as "cause" is relevant to determining whether a claim is uncovered or covered under Paragraph 1 of the exclusion—that is, whether the claim was "directly or indirectly occasioned by, happening through or in consequence of . . . pollution and contamination of any kind whatsoever . . . unless caused by or resulting in a crash fire explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation"—there is no indication whatsoever that "cause" bears on the meaning of "claim" itself. Joint App'x at 139.

The Insurers suggest that "a subsequent allocation of the demand into distinct claims for cleanup costs attributable to specific pollution causes" is "entirely consistent with . . . the ordinary meaning of claim." Appellants' Br. at 27 (emphasis omitted) (internal quotation marks omitted). We disagree. The Pollution Exclusion plainly contemplates "claims" plural, not one "claim" divided, and "we are not free to 'rewrite into a contract conditions the parties did not insert by adding or excising terms under the guise of construction.'" *Bank of N.Y. Mellon Trust Co., N.A.*

10

*v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 307 (2d Cir. 2016) (quoting *Slamow v. Del Col*, 174 A.D.2d 725, 727 (2d Dep't 1991)). Moreover, our interpretation is also consistent with the use of the term "policy" in the provision—*i.e.*, "claims covered by *the policy*"—which refers to the entirety of the agreement between the Town and the Insurers and necessarily contemplates the potential combination of completely distinct claims. *See, e.g.*, Joint App'x at 130 ("Read the entire policy carefully to determine rights, duties and what is and is not covered."); *see also Rhine v. N.Y. Life Ins. Co.*, 248 A.D. 120, 133–35 (1st Dep't 1936) (explaining that an insurance policy refers to the parties' full agreement). Accordingly, the district court correctly determined that "[a] single claim cannot be a 'combined claim'; the provision unambiguously refers to a situation where a claim that would be excluded by the Pollution Exclusion is brought *with* another claim that would be covered by the Policies." *Town of Harrietstown*, 2025 WL 2391758, at *12.

Applying that interpretation here,[3] there is no question that the November 2020 PRP letter received by the Town from the NYSDEC, regarding contamination at the Airport, constitutes a *single* claim—*i.e.*, a single entitlement to relief or assertion of a right—under the Policies. The PRP letter asserts a singular claim that the Town may be liable for contamination, requiring "implement[ation] or financ[ing] [of] a remedial program in connection with the contamination at or emanating from the Site." Joint App'x at 185. Likewise, when the demand was transmitted to the Insurers, the Town noted that it was seeking information regarding coverage for "a mandate to the Town"—*i.e.*, the financing and implementation of the remedial program—"by the [NYSDEC]." *Id.* at 190. Indeed, the Insurers' own communications predominantly, although not exclusively, refer to the request as a single claim. *See, e.g.*, *id.* at 236 ("Notice of *Claim*"; "*Claim*

---

[3] We note that, as an initial matter, the Insurers do not challenge the district court's determination that "the PRP letter is sufficiently adversarial to constitute a 'claim' or 'suit' against the Town." *Town of Harrietstown*, 2025 WL 2391758, at *16.

Number") (emphases added); *id.* at 240 (requesting "documentation that you believe is relevant to our assessment of this *claim*"); *but see id.* at 372 (contemplating the possibility "that the claims asserted by the NYDEC [sic] fall within the [Pollution Exclusion]"). In short, the NYSDEC claim does not fall within the "Combined Claims" provision under the Pollution Exclusion.[4]

Finally, as the district court noted, "[the] Insurers do not dispute that they were aware that at least one alleged source of contamination at the Airport is firefighting foam that was used in response to crashes or similar events, which raises a reasonable possibility that at least some of the contamination at the Airport resulted from a fire or other enumerated emergency listed in the exception" to the Pollution Exclusion. *Town of Harrietstown*, 2025 WL 2391758, at *18. That reasonable possibility of coverage under that exception to the Pollution Exclusion is sufficient to trigger the broad duty to defend under New York law. *See U.S. Fid. & Guar. Co. v. Exec. Ins. Co.*, 893 F.2d 517, 519 (2d Cir. 1990) ("If the allegations of the complaint are ambiguous or incomplete, the insurer is nevertheless obligated to defend if the case is potentially within the coverage of the policy.") (internal quotation marks and citation omitted). Moreover, the duty to defend continues "until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (emphasis in original).

---

[4] Even if we found the Insurers' interpretation of the contract reasonable, because we find that the Town's interpretation is reasonable, at most this would render the Combined Claims provision ambiguous, and under New York law, "[a]mbiguities are generally resolved in the insured's favor." *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009); *see also Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 402–03 (2d Cir. 2023) ("When a contract of insurance is ambiguous and the evidence furnishes no basis for resolving the ambiguity, New York law provides that the court's decision must favor the insured over the insurer as long as the insured's interpretation is reasonable."). Accordingly, as the district court noted, we would affirm in favor of the Town even if we found the Combined Claims provision to be ambiguous. *See Town of Harrietstown*, 2025 WL 2391758, at *15 n. 4 (noting that the court would "favor[] the Town's interpretation" regardless of "whether the Policies' language is ambiguous or unambiguous").

Accordingly, we agree with the district court's determination that "[the] Insurers have a duty to defend the Town under the terms of the Policies unless and until such time as the Insurers can establish with certainty that the NYSDEC claim falls outside of an exception of the Pollution Exclusion clause." *Town of Harrietstown*, 2025 WL 2391758, at *21.

\* \* \*

We have considered the Insurers' remaining arguments and conclude that they are without merit.[5] Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[5] Because we affirm for the reasons stated above, we need not reach the Town's alternative arguments with respect to the duty to defend.