This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------

No. 4
Selective Insurance Company of
America, et al.,
        Respondents-Appellants,
      v.
County of Rensselaer,
        Appellant-Respondent.

Melissa J. Smallacombe, for appellant-respondent.
Richard A. Galbo, for respondents-appellants.

ABDUS-SALAAM, J.:

        We conclude that the underlying class action civil
rights suit at issue does not constitute one occurrence under the
relevant policies' definition of "occurrence" and that the
attorney's fees generated in defending that suit were properly
allocated to the named plaintiff.  Therefore, we affirm the order

- 1 -

of the Appellate Division.

## I.

The County of Rensselaer implemented a policy of strip-searching all people who were admitted into its jail, regardless of the type of crime the person was alleged to have committed. At that time, the Second Circuit's precedent suggested that such a policy was unconstitutional (see Weber v Dell, 804 F2d 796 [1986] [holding that strip-searching an arrestee is unconstitutional when he or she is alleged to have committed a misdemeanor and jail authorities have no reasonable suspicion that the arrestee is concealing weapons or other contraband]). Believing the County's strip-search policy to be unconstitutional, Nathaniel Bruce and other named arrestees commenced a proposed class action suit in 2002 against the County in federal court. Seeking to defend itself against the suit, the County invoked plaintiff Selective Insurance Company's duty to provide a defense under the policies that the company sold to the County.

In 1999, the County obtained year-long liability insurance coverage from Selective for, among other things, personal injury arising out of the conduct of its law enforcement activities. As relevant here, the County renewed the policy in 2000, 2001, and 2002. Each policy defines personal injury as including "injury . . . arising out of one or more of the

following offenses: . . . [h]umiliation or mental anguish [or] .
. . [v]iolation of civil rights protected under 42 USC [§] 1981."
Where the County is sued based on a covered personal injury, each
policy provides that Selective's "obligation . . . to pay damages
on behalf of the insured applies only to the amount of damages in
excess of any deductible stated in the [d]eclarations."  The
deductible was $10,000 per claim under the 1999, 2000, and 2001
policies and $15,000 under the 2002 policy.  The deductible
applied to all covered damages "sustained by one person or
organization as the result of any one 'occurrence.'"
Additionally, the County's deductible amount applied to each
"occurrence" and "include[d] loss payments and adjustments,
investigative and legal fees and costs, whether or not loss
payment [wa]s involved."  An "occurrence" was defined as follows:

> "'Occurrence' means an event, including
> continuous or repeated exposure to
> substantially the same general harmful
> conditions, which results in . . . 'personal
> injury' . . . by any person or organization
> and arising out of the insured's law
> enforcement duties.  All claims arising out
> of (a) a riot or insurrection, (b) a civil
> disturbance resulting in an official
> proclamation of a state of emergency, (c) a
> temporary curfew, or (d) martial law are
> agreed to constitute one 'occurrence.'"

Selective agreed to defend the County in the action,
subject to the insurance policy limits and the deductible, for
personal injury damages that resulted from the suit.  Selective
retained counsel to represent the County, who purportedly were
experts in class actions suits.  Ultimately, during negotiations,

the County and Selective's counsel agreed to settle the case instead of challenging class certification, as Selective's counsel informed the County that there were no viable defenses. Selective's counsel began settlement negotiations with the Bruce plaintiffs. The plaintiffs, however, missed several filing deadlines, and eventually their case was dismissed on those procedural grounds. The Bruce plaintiffs appealed and their counsel filed a second, similar class action soon thereafter, the Kahler action.

Selective's counsel and the County agreed to settle both actions for $1,000 per plaintiff, later determined to be sightly over 800 individuals in total, with additional attorney's fees also being recoverable. Thereafter, the Bruce and Kahler actions were consolidated and the federal district court, in accordance with the terms of the negotiated settlement, certified the class, approved a $5,000 payment to the named plaintiff Nathaniel Bruce, and a $1,000 payment to all other class members. The settlement also set the members' attorney's fees at $442,701.74. Selective abided by the terms of the settlement. The County then refused to pay Selective anything more than a single deductible payment.

In turn, Selective commenced this action for money damages, arguing that each class member was subject to a separate deductible. The County moved to dismiss the action, arguing that the $10,000 deductible it paid was the only amount due and that

even if the court determined that a new deductible applied to each class member, the legal fees generated in that action should be allocated to only one policy. Selective cross-moved for partial summary judgment on its claims, seeking a declaratory judgment that the County owes it a separate deductible for each class member, and that both the class members' and Selective's attorney's fees should be calculated by allocating the settled amount of fees ratably to each occurrence. The County opposed Selective's cross-motion, raising its prior arguments and also asserted that Selective exercised bad faith by settling the underlying action without challenging class certification and then contending that because the harm to each class member is a separate occurrence, the County is responsible for a deductible payment for each class member.

Supreme Court determined that a separate deductible payment applied to each class member and that all legal fees should be allocated to one policy. The Appellate Division affirmed (see 113 AD3d 974 [3d Dept 2014]). This Court granted leave to appeal to both parties.

II.

"In determining a dispute over insurance coverage, we first look to the language of the policy" (Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 NY2d 208, 221 [2002], citing Breed v Insurance Co. of N. Am., 46 NY2d 351, 354 [1978]).

"[U]nambigous provisions of an insurance contract must be given their plain and ordinary meaning" (White v Continental Cas. Co., 9 NY3d 264, 267 [2007]).  "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion'" (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]).  Therefore, if a contract "on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity" (Greenfield, 98 NY2d at 569-570 [citations omitted]).

Insurance policies must be "construe[d]. . . in a way that 'affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect'" (Consolidated Edison, 98 NY2d at 221-222, quoting Hooper Assoc. v AGS Computers, 74 NY2d 487, 493 [1989]).  Consistent with that view, "[a] reviewing court must [then] decide whether  . . . there is a reasonable basis for a difference of opinion as to the meaning of the policy.  If this is the case, the language at issue would be deemed to be ambiguous and thus interpreted in favor of the insured" (Federal Ins. Co. v International Bus. Machs. Corp., 18 NY3d 642, 646 [2012] [internal citations, quotation marks, and alterations omitted]; see White, 9 NY3d at 267; Breed v Insurance Co. of N. Am., 46 NY2d 351, 353 [1978]).

The plain language of the insurance policy indicates that the improper strip searches of the arrestees over a four-year period constitute separate occurrences under the policies at issue. Contrary to the County's argument, the definition of "occurrence" in the policies is not ambiguous. The policy defines 'occurrence' as "an event, including continuous or repeated exposure to substantially the same general harmful conditions, which results in . . . 'personal injury' . . . by any <u>person</u> or organization and arising out of the insured's law enforcement duties" (emphasis added). Thus, the language of the insurance policies makes clear that it covers personal injuries to an individual person as a result of a harmful condition. The definition does not permit the grouping of multiple individuals who were harmed by the same condition, unless that group is an organization, which is clearly not the case here. The harm each experienced was as an individual, and each of the strip searches constitutes a single occurrence.[*]

Moreover, the policies' definition of "occurrence" specifically describes four large-scale events that may constitute a single occurrence: (1) a riot or insurrection, (2) a civil disturbance resulting in an official proclamation of a

---

[*] While this Court has rejected the one-accident/occurrence per person approach in the absence of policy language dictating such an approach (see <u>Appalachian Ins. Co. v General Elec. Co.</u>, 8 NY3d 162, 173 [2007]), we have also noted that the parties to an insurance contract remain free to define "occurrence" based on that approach if they so wish (see <u>id.</u> at 173).

state of emergency, (3) a temporary curfew, or (4) martial law. None of these listed circumstances encompasses a civil class action suit based upon a common policy. Thus, under the plain language of the insurance policies, each strip-search of the class members is a separate and distinct occurrence subject to a single deductible payment.

The County also asserts that Selective exhibited bad faith by not challenging the class certification in the underlying action and reaching a settlement that made the County liable for all the damages recovered by the class members. This Court has stated that "an insurer may be held liable for the breach of its duty of 'good faith' in defending and settling claims over which it exercises exclusive control on behalf of its insured" (Pavia v State Farm Mut. Auto. Ins. Co., 82 NY2d 445, 452 [1993]). "[T]o establish a prima facie case of bad faith, the [insured] must establish that the insurer's conduct constituted a 'gross disregard' of the insured's interests -- that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer" (id. at 453).

Under the terms of the policies, Selective had discretion to investigate and settle any claim or suit commenced against the County. The County, however, has failed to meet the high burden of demonstrating that Selective acted in bad faith in negotiating the underlying settlement here. There is no

indication from the record that Selective's conduct constituted a gross disregard of the County's interests.  Selective hired competent attorneys to defend the County in the underlying action and played an active role in the negotiation.  Thus, the County's bad faith argument lacks merit.

With respect to attorney's fees, Selective argues that the courts below erred in allocating the attorney's fees to the named plaintiff only, rather than allocating the fees ratably amongst the class, while the County contends that the lower courts' rulings were correct.  We agree with the County.

Based on the policies' definition of occurrence, the injuries sustained by the class members do not constitute one occurrence but multiple occurrences.  Selective thus asserts that as a result of these multiple occurrences the attorney's fees should be allocated ratably among the deductibles.  Equally reasonable is the County's assertion that given that there was one defense team for all class members, the fee should be attributed only to the named plaintiff, Bruce.  It is undisputed that the policies are silent as to how attorney's fees would be allocated in class actions and therefore ambiguous on this point. Where the language of the policy at issue is ambiguous, and both parties' interpretation of the language is reasonable, the policy language should be interpreted in favor of the insured (see Federal Ins. Co., 18 NY3d at 646; see also Breed, 46 NY2d at 353).  Here the policies' silence on how to allocate attorney's

fees in a class action creates ambiguity as both Selective's and the County's contentions are reasonable. Consequently, the courts below correctly interpreted the policies in favor of the insured -- the County -- and the attorney's fees were properly charged to the named plaintiff, Bruce.

### III.

We have considered the parties' remaining arguments and conclude that they raise no issue warranting modification of the Appellate Division order. Accordingly, the order of that court should be affirmed, without costs.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order affirmed, without costs. Opinion by Judge Abdus-Salaam. Judges Pigott, Rivera, Stein and Fahey concur. Chief Judge DiFiore and Judge Garcia took no part.

Decided February 11, 2016