■ CASTLE OIL CORPORATION, Respondent, v ACE AMERICAN INSURANCE COMPANY, Appellant. [26 NYS3d 783]—

In an action to recover damages for breach of a commercial property insurance policy, the defendant appeals (1) from an order of the Supreme Court, Westchester County (Smith, J.), entered January 2, 2014, which granted the plaintiff's motion, in effect, for summary judgment on the complaint and dismiss-

ing the defendant's sixth affirmative defense, and denied the defendant's cross motion for summary judgment dismissing the complaint, and (2), as limited by its brief, from so much of an order of the same court entered March 12, 2014, as, in effect, upon reargument, adhered to the original determination.

Ordered that the appeal from the order entered January 2, 2014, is dismissed, as that order was superseded by the order entered March 12, 2014, made, in effect, upon reargument; and it is further,

Ordered that the order entered March 12, 2014, is reversed insofar as appealed from, on the law, upon reargument, the order entered January 2, 2014, is vacated, the plaintiff's motion is denied, and the defendant's cross motion is granted; and it is further,

Ordered that one bill of costs is awarded to the defendant.

The plaintiff, Castle Oil Corporation (hereinafter Castle Oil), owns and conducts operations in New York at various facilities, including a fuel oil terminal directly adjacent to the East River in the Port Morris section of the Bronx (hereinafter the Port Morris Terminal). In 2012, Castle Oil obtained a commercial property insurance policy from the defendant, ACE American Insurance Company (hereinafter ACE). The policy's total limit of liability was "$150,000,000 per occurrence excess of deductibles." With respect to flood coverage, the policy contained two separate annual aggregate sublimits. The parties do not dispute that the sublimit applicable to the Port Morris Terminal was $2,500,000 because the Port Morris Terminal is located in one of the several Special Flood Hazard Areas, as defined by the Federal Emergency Management Agency (hereinafter FEMA), listed in the policy.

The policy contained a "Schedule of Locations Endorsement" in which certain "values" were listed for three Castle Oil locations. The total value listed for the Port Morris Terminal was $124,701,000, consisting of real and personal property totaling $66,850,000, inventory totaling $49,451,000 (monthly average), business interruption totaling $7,000,000, and rents totaling $1,400,000. A note near the bottom of the Locations Endorsement stated: "Values shown above are for premium purposes only." A separate "Agreed Amount Endorsement" indicates that Castle Oil had provided the listed values on the Locations Endorsement.

Finally, the policy provided that "2% of the total insurable values at risk per location subject to a minimum of $250,000" would be deducted from each adjusted claim arising out of a flood "occurrence." This action centers on the meaning of "total insurable values at risk per location."

In October 2012, flooding from Superstorm Sandy caused extensive damage and loss at the Port Morris Terminal, and Castle Oil timely submitted a claim to ACE in the amount of $2,284,239.95. ACE responded that the claim was less than the deductible applicable to the Port Morris Terminal location. That deductible, according to ACE, was $2,494,020, which was 2% of the $124,701,000 valuation for the Port Morris Terminal that Castle Oil had provided. Accordingly, ACE stated that the policy "does not respond to the Loss."

After receiving ACE's letter, Castle Oil commenced this action alleging breach of the policy. In its answer, ACE interposed, as relevant here, a sixth affirmative defense to the effect that the applicable deductible was $2,494,020, calculated by applying the 2% provision to the valuation of the insurable values at that location.

Castle Oil moved, in effect, for summary judgment on the complaint and dismissing ACE's sixth affirmative defense, contending that the deductible applicable to flood coverage at the Port Morris Terminal was $250,000, which it arrived at by applying the 2% provision to the flood sublimit of $2,500,000 applicable to the Port Morris Terminal and then applying the $250,000 minimum deductible override. ACE opposed Castle Oil's motion and cross-moved for summary judgment dismissing the complaint.

The Supreme Court granted Castle Oil's motion and denied ACE's cross motion. The court concluded that in the absence of a definition in the policy of "total insurable values at risk per location," a reasonable person in the insured's position would expect that phrase to refer to the $2,500,000 flood coverage sublimit applicable to the Port Morris Terminal. It explained that "[t]he 'values at risk' language necessarily refers to the policy's sublimit amount, and not the total value of the property insured under the Policy . . . because the insurance company expressly is 'at risk' of paying only the full amount of the sublimit." The court rejected ACE's argument that, viewed from the insured's perspective, the amount "at risk" was the total value of Castle Oil's Port Morris Terminal, as provided by Castle Oil. In rejecting ACE's argument, the court placed emphasis on the "note" on the Schedule of Locations Endorsement, which stated that the Values "are for premium purposes only." The court concluded that those values could not, therefore, be used to calculate the deductible. The court further reasoned that ACE's calculation would result in no coverage at all for Castle Oil's multimillion dollar loss and would thus "render the flood damage sublimit of $2,500,000 absolutely

meaningless and the flood insurance plaintiff believed it had procured illusory."

Upon ACE's motion for leave to reargue, the Supreme Court reexamined the parties' contentions, and concluded that it had not overlooked relevant facts nor misapplied any controlling principal of law. In effect, the court granted reargument and adhered to its original determination (*see Chase Manhattan Mtge. Corp. v Anatian*, 22 AD3d 625, 626-627 [2005]).

Insurance agreements are to be interpreted under the same principles applicable to contracts generally (*see Universal Am. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 NY3d 675, 680 [2015]). Unambiguous provisions must be given their "plain and ordinary meaning" (*id.* at 680). "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent" (*Ellington v EMI Music, Inc.*, 24 NY3d 239, 244 [2014]), "or where its terms are subject to more than one reasonable interpretation" (*Universal Am. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 NY3d at 680). " '[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech' " (*id.*, quoting *Matter of Mostow v State Farm Ins. Cos.*, 88 NY2d 321, 326-327 [1996]). It is for the court to determine whether an insurance agreement is ambiguous.

We agree with the parties and with the Supreme Court that this insurance agreement is not ambiguous with respect to the applicable deductible, but we disagree with the court's interpretation of the provision as to the deductible. When the "average insured" thinks about "risk," the concern is about the risk of loss. The desire to manage that risk of loss is the reason for obtaining insurance coverage in the first place (*see generally* 1 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 1.01). Moreover, to obtain insurance as to a particular risk of loss, the insured must have an "insurable interest" (*see National Superlease v Reliance Ins. Co. of N.Y.*, 123 AD2d 608, 608-609 [1986]; *see generally* 1 Wolcott B. Dunham, New Appleman New York Insurance Law, Second Edition § 3.01). Furthermore, in deciding how much coverage to seek, a primary concern of the average insured is the value of what is at risk. In deciding how much coverage to seek, various considerations are taken into account, including the likelihood of significant loss and the cost of insurance. How much insurance the average insured chooses to obtain is not the same as the "total insurable values at risk," and the average insured could not reasonably conclude that "total insurable

values at risk" refers to a limit of coverage that is less than that total amount at risk. We thus conclude that the average insured could have only one reasonable expectation as to the meaning of the phrase "total insurable values at risk," namely, its own risk of loss and damage.

The Supreme Court concluded that ACE's position renders Castle Oil's flood protection "illusory." We disagree. The policy's coverage is not rendered "illusory" simply by the fact that this claim falls entirely within the deductible. If Superstorm Sandy had instead caused $5,000,000 of damage and loss at the Port Morris Terminal, Castle Oil would have been out-of-pocket for the $2,494,020 deductible, but also would have been paid the entire $2,500,000 coverage sublimit.

Castle Oil's position is unreasonable for the additional reason that it would render much of the deductible provision—"2% of the total insurable values at risk per location subject to a minimum of $250,000"—entirely superfluous. Applying this formula for the $2,500,000 sublimit applicable to Castle Oil's Port Morris Terminal would result in the amount of $50,000, which would be overridden by the $250,000 minimum. Moreover, applying the formula to the flood coverage sublimit of $10,000,000 applicable to Castle Oil's locations not in a FEMA-defined flood area would result in the amount of $200,000, which also would be overridden by the $250,000 minimum. Inasmuch as the deductible would always be $250,000, the 2% provision would have been completely unnecessary, and the contract would simply have used the $250,000 flat deductible amount that is used elsewhere in the policy with respect to other coverage.

The total insurable value of the Port Morris Terminal was submitted by Castle Oil in a Statement of Values and utilized in endorsement No. 30, the "Schedule of Locations Endorsement." Castle Oil contends that these values cannot be the total insurable values referred to in the flood damage deductible provision since endorsement No. 30 had a note at the bottom indicating that the values therein were "for premium purposes only." endorsement No. 30 states "[i]t is hereby understood and agreed that the following location(s) is (are) insured under this Policy, subject to all terms, conditions, and limitations of this Policy." The reasonable interpretation of the note indicating that the values were for premium purposes is that the values shown in endorsement No. 30 were the values used to determine the premiums only, not the limitations of the policy. It does not preclude the use of these values in the calculation of the applicable flood deductible, which, in any event, is relevant in determining the amount of the premium.

The parties' remaining contentions have been rendered academic in light of our determination.

In sum, there is only one reasonable interpretation of the relevant deductible provision of the policy. That interpretation supports ACE's contention that the applicable deductible was $2,494,020, and that the claim submitted by Castle Oil did not meet the deductible. Accordingly, Castle Oil's motion for summary judgment should have been denied and ACE's cross motion for summary judgment should have been granted. Balkin, J.P., Hall, Roman and Maltese, JJ., concur.