STEIN, J. (dissenting).
In concluding that the Appellate Division order should be affirmed, the majority focuses on a single word in the blanket additional insured endorsement at issue while ignoring others, thereby finding clarity where none exists. In doing so, the majority disregards the appropriate standard **166 of review concerning barriers to coverage and, as a result, undermines an industry market solution aimed at efficiently allocating risk among entities involved in construction projects. Because the language of the policy endorsement is ambiguous and subject to more than one reasonable interpretation, it should be construed against defendant Liberty Insurance Underwriters, as the insurer, and in favor of coverage. The majority interprets the ambiguous language in favor of defendant and I, therefore, respectfully dissent.
The starting point in a dispute over insurance coverage is the language of the policy itself (see Selective Ins. Co. of Am. v. County of Rensselaer, 26 N.Y.3d 649, 655, 27 N.Y.S.3d 92, 47 N.E.3d 458 [2016] ). Of course, "[a]n insurance agreement is subject to principles of contract interpretation" ( Universal Am. Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 25 N.Y.3d 675, 680, 16 N.Y.S.3d 21, 37 N.E.3d 78 [2015] ) and, "[a]s with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning" ( White v. Continental Cas. Co., 9 N.Y.3d 264, 267, 848 N.Y.S.2d 603, 878 N.E.2d 1019 [2007] ). An insurance "contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion" ( Greenfield v. Philles Records, 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 [2002] [internal quotation marks, brackets and citation omitted] ). Particularly relevant here, " 'the test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech' " ( Universal Am. Corp., 25 N.Y.3d at 680, 16 N.Y.S.3d 21, 37 N.E.3d 78, quoting Matter of Mostow v. State Farm Ins. Cos., 88 N.Y.2d 321, 326-327, 645 N.Y.S.2d 421, 668 N.E.2d 392 [1996] ; accord Federal Ins. Co. v. International Bus. Machs. Corp., 18 N.Y.3d 642, 646, 942 N.Y.S.2d 432, 965 N.E.2d 934 [2012] ; Cragg v. Allstate Indem. Corp., 17 N.Y.3d 118, 122, 926 N.Y.S.2d 867, 950 N.E.2d 500 [2011] ). Guided by these principles,
"[a] reviewing court must decide whether, affording a fair meaning to all of the language employed by the parties in the contract and leaving no provision without force and effect, there is a reasonable basis for a difference of opinion as *715 to the meaning of the policy. If this is the case, the language at issue would be deemed to be ambiguous and thus interpreted in favor of the insured"
( Federal Ins. Co., 18 N.Y.3d at 646, 942 N.Y.S.2d 432, 965 N.E.2d 934 [internal quotation marks, brackets, and citations omitted]; see White, 9 N.Y.3d at 267, 848 N.Y.S.2d 603, 878 N.E.2d 1019 ).
The endorsement in the policy at issue here provides, in relevant part, as follows: "WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization with whom you have agreed to add as an additional insured by written contract." The pertinent language, as written, is awkward and unclear, at the very least. Plaintiff Gilbane JV asserts that the phrase "by written contract" modifies "to add," and argues that it refers to the act of the named insured, Samson, agreeing to add an additional insured. Put differently, Gilbane JV argues that "by written contract" means only that any agreement by Samson to add an additional insured must be memorialized in a writing-not necessarily a writing between Samson and the purported additional insured. Thus, according to Gilbane JV, the contract between DASNY and Samson-under which Samson agreed in writing to **167 procure a general liability insurance policy for the construction project and to name Gilbane JV as an additional insured-was sufficient to confer additional insured status upon Gilbane JV. Defendant, on the other hand, focuses on the phrase "with whom," arguing that the named insured must agree with the purported additional insured, in a writing between those parties, to add coverage for that entity under the policy.
Fixating on the word "with," the majority summarily concludes that the policy does not "provide for coverage unless Gilbane JV is an organization 'with whom' Samson has a written contract" (majority op., at 135, 74 N.Y.S.3d at 164, 97 N.E.3d at 712). In so doing, the majority places the phrase "by written contract" directly after "agreed," effectively rewriting the policy while altogether failing to address Gilbane JV's proposed construction. Under this reformulation, the pertinent policy language would confer additional insured status upon "any person or organization with whom you have agreed by written contract to add as an additional insured." Of course, that is not what the policy says. Moreover, even though the majority's construction is reasonable, the policy language is ambiguous because the construction proffered by Gilbane JV is also reasonable; indeed, Gilbane JV's interpretation is consistent with the "reasonable expectations of the average insured" that would seek to procure this type of coverage, whereas defendant's interpretation is not ( Universal Am. Corp., 25 N.Y.3d at 680, 16 N.Y.S.3d 21, 37 N.E.3d 78 ).
In particular, given the unusual syntax of the endorsement-placing the phrase "by written contract" at the end of the sentence, a placement the majority chooses to ignore-it is reasonable for the average insured to expect that the phrase "by written contract" modifies only the immediately preceding infinitive "to add," such that the phrase prescribes only that the agreement by which the named insured commits to extend coverage to the purported additional insured must be evidenced in a contract reduced to writing. In any event, because each party's reading of this language is reasonable, the endorsement is "ambiguous and thus [should be] interpreted in favor of" coverage ( Federal Ins. Co., 18 N.Y.3d at 646, 942 N.Y.S.2d 432, 965 N.E.2d 934 ). It follows, then, that the endorsement should not be interpreted as imposing a requirement of privity between Samson and Gilbane JV to effectuate additional insured coverage of Gilbane JV, and the DASNY-Samson contract was sufficient *716 to satisfy the policy provision and entitle Gilbane JV to such coverage.[1]
A review of Liberty Mut. Fire Ins. Co. v. Zurich Am. Ins. Co., 2016 WL 452157, 2016 U.S. Dist. LEXIS 13604 [S.D.N.Y. Feb. 4, 2016] )-a case in which defendant sought a declaration of additional insured coverage under a policy issued by Zurich and took a position antithetical to the one it takes here, yet also prevailed-is instructive. In that case, construing similar policy language, the District Court rejected the argument that defendant now asserts, **168 "as an incorrectly cramped reading of the policy language" ( id. at *2 ).[2] The District Court reasoned that the additional insured clause extended coverage to "any person or organization with whom the insured... agreed in a written contract to provide insurance for," explaining that the endorsement was "not so restrictive as to limit coverage to only the person or organization with whom ... the named insured...contracted" ( id. [internal quotation marks and citation omitted] ). That court declined to "add a requirement of direct contractual privity between the named insured and the purported additional insured that [did] not exist in the policy language" ( id. at *2, n. 3). This Court should, likewise, refuse to impose this additional requirement in the face of the ambiguous policy language here.[3] If defendant sought that requirement, it could have so provided by using clear and unambiguous language (compare AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc., 102 A.D.3d 425, 426, 961 N.Y.S.2d 3 [1st Dept. 2013] [holding a privity requirement exists where the policy unambiguously stated that an organization is added as an additional insured "when you and such ... organization have agreed in writing or in a contract or agreement that such ... organization be added as an additional insured on your policy"]; *717 Linarello v. City Univ. of N.Y., 6 A.D.3d 192, 774 N.Y.S.2d 517 [1st Dept. 2004] [same] ). Its failure to do so is fatal to the argument it advances here.
Moreover, interpreting the policy language as imposing an additional privity requirement where none clearly exists runs counter to the intended purpose of the type of additional insured endorsement at issue here. It is hornbook law that
"[f]or an additional premium to the named insured, a third party such as a general contractor or project owner can be named by endorsement as an additional insured on the [general commercial liability] policy of a named insured such as a subcontractor. In fact, in the construction industry, this is the rule" (Scott C. Turner, Insurance Coverage of Construction Disputes § 42:1 [2d ed] [emphasis omitted] ).
Construction project owners, such as DASNY, customarily require contractors of every tier, such as Samson, to provide coverage for "upstream" parties-such as Gilbane JV-as additional insureds on their general liability policies (see id. ).
**169 This allocation of risk makes sense insofar as the party that is best positioned to control and mitigate any potential risks is responsible for obtaining coverage that extends to those upstream entities that are removed from the work being performed by a particular subcontractor yet-as a property owner or project manager-may be exposed to third-party liability.[4]
Consistent with this risk transfer regime, "[a] blanket additional insured endorsement generally provides coverage for any person or organization to whom or to which the named insured is obligated to name as an additional insured by virtue of a written contract or agreement" (3 Steven Plitt et al., Couch on Insurance § 40:30 [3d ed] ).[5] The point of such a blanket endorsement is to furnish a means of providing such coverage that is more efficient than requiring either a separate contract between each subcontractor and each additional insured (which the majority finds to be necessary here) or that the policy list the identity of each additional insured (a list that would have to be amended whenever the named insured undertakes an obligation to add a new upstream entity, consistent with standard commercial practice). In that regard, counsel for defendant conceded that underwriting considerations for a policy like the one before us are based, not on the number or identity of additional insureds that may be covered *718 but, instead, on the nature of the insured's work. Thus, when Samson-a subcontractor on a major construction project, with a practical understanding of risk allocation in the construction industry-procured the policy here, it would reasonably expect that it had the right to add Gilbane JV, an upstream entity, as an additional insured without the approval of, or even so much as a notification to, defendant, so long as such coverage was required by a written contract. Seen through this lens, the interpretation proffered by Gilbane JV is consistent with the "reasonable expectations of the average insured upon reading the policy and employing common speech" ( Universal Am. Corp., 25 N.Y.3d at 680, 16 N.Y.S.3d 21, 37 N.E.3d 78 [internal quotation marks and citation omitted] ). Faced with two competing, reasonable interpretations, the language of the endorsement at issue is ambiguous and, therefore, should be interpreted in favor of coverage (see Federal Ins. Co., 18 N.Y.3d at 646, 942 N.Y.S.2d 432, 965 N.E.2d 934 ). **170 Accordingly, I would reverse the order of the Appellate Division, answer the certified question in the negative, and remit for consideration of issues raised, but not addressed, by that Court.
Order affirmed, with costs, and certified question answered in the affirmative.
Judges Rivera, Fahey, Garcia and Feinman concur. Judge Stein dissents in an opinion in which Chief Judge DiFiore concurs.

Contrary to the majority's characterization, the DASNY-Samson contract cannot simply be discarded in the "extrinsic materials" bin (majority op., at 136, 74 N.Y.S.3d at 165, 97 N.E.3d at 713). The parties do not dispute that, pursuant to the DASNY-Samson contract, Samson agreed to procure general liability insurance with an endorsement naming Gilbane JV as an additional insured. That contract establishes that the condition to coverage-i.e., that the agreement by Samson to add Gilbane JV as an additional insured must be memorialized in a written contract-has been satisfied. In other words, the DASNY-Samson contract is not extrinsic evidence necessary to interpret the policy language but, instead, demonstrates compliance with the condition to coverage.

The language of the policy at issue in Zurich was more favorable to the insurer resisting coverage, providing that "additional insured[s] include [a]ny person or organization with whom you have agreed, through written contract, agreement or permit, executed prior to the loss, to provide additional insured coverage" (id. at *1 [internal quotation marks and citation omitted] ).

The majority rejects Zurich and other authorities construing similar contractual language in a like manner, asserting that the policy language is not rendered ambiguous because those "courts may have erred" in determining that more than one reasonable interpretation of the policy language exists (majority op. at 136 n.1, 74 N.Y.S.3d at 167 n.1, 97 N.E.3d at 716 n.1). In support of that proposition, the majority cites Breed v. Insurance Co. of N. Am., 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 [1978] ). However, Breed merely stands for the proposition that "[i]t is ... for this court to say, as matter of law, whether reasonable [people] may reasonably differ as to ... [the] meaning [of an exclusionary clause in an insurance policy], or whether the indulgence of the lower courts has ... written a new contract for the parties and extended the defendant's liability beyond the plain and unambiguous language of the policy" (id. ). It is the majority that, by ignoring one reasonable interpretation, rewrites the policy at issue here in violation of Breed and curtails defendant's liability, contrary to what the insurer and insured originally contemplated, as discussed more fully herein.

As amicus Turner Construction Company explains, because every construction project involves inherent risks for each individual participant in the project, the construction industry has established a common risk transfer method under which the party closest to the work being performed-and, thus, in the best position to control the work-bears the risk of any bodily injury or property damage arising from that work. In other words, the risk falls on the party best positioned to mitigate potential hazards. A critical component of risk transfer in the industry is additional insured coverage afforded to parties that are upstream-typically general contractors, construction managers, and property owners-and do not have immediate control over the work being performed. Downstream subcontractors, at each tier, are typically required to provide this coverage for all upstream parties. Blanket additional insured endorsements are, thus, a market solution aimed at efficiently allocating risk consistent with these widely-understood conventions.

Presumably, the requirement of a written contract safeguards against potential abuse by ensuring that the extension of additional insured coverage legitimately falls within the scope of the named insured's operations. Here, as discussed above, the DASNY-Samson contract is a written contract in which Samson agreed to extend coverage to Gilbane JV, an upstream entity on the construction project on which Samson was engaged to work. Therefore, the DASNY-Samson contract, alone, satisfies any potential legitimacy concerns.